GREAT FALLS MANUF'G Co. *v.* GARLAND, Atty. Gen., etc., and others.[1]

(*Circuit Court, D. Maryland.* July 28, 1885.)

1. EMINENT DOMAIN — WASHINGTON CITY WATER SUPPLY — ASCERTAINMENT OF DAMAGES BY JURY — ACT OF CONGRESS OF JULY 15, 1882.

The act of congress approved July 15, 1882, to increase the water supply of the city of Washington, is not unconstitutional for the reason that it does not provide that ascertainment of the compensation for property taken shall be by the verdict of a jury.

2. SAME — ASCERTAINMENT OF DAMAGES BY COURT OF CLAIMS.

The provision of that act by which any person interested in the property taken, who should not for any reason have received payment for any damage sustained, might file a petition in the court of claims and have his claims adjudicated in that court, and a judgment entered in his favor against the United States, was a sufficient and constitutional provision for the ascertainment of the compensation to be paid to such person.

3. SAME — EVIDENCE OF APPROPRIATION OF PROPERTY.

The advertisement, map, and survey made by the secretary of war, exhibited in this case, sufficiently describe the property of complainant appropriated to the United States under the act of congress, and were sufficient to give jurisdiction to the court of claims.

4. SAME — NOTICE — FILING CLAIM IN COURT OF CLAIMS — WAIVER OF APPRAISEMENT.

The complainant, through its agents, had actual notice of the extent to which its lands and water-rights were appropriated to the use of the United States, and, having filed its claim for compensation in the court of claims, it has waived any objection it might have made by reason of the fact that the secretary of war did not, as provided by the act of congress, have the land and water-rights valued by appraisers, and did not offer to complainant the amount of such appraisement.

5. SAME — POSSESSION BEFORE COMPENSATION.

The appropriation being by the United States itself, and not by a private corporation under its authority, *held,* that it was lawful for congress to authorize possession to be taken before the compensation had been ascertained, provided it designated a proper tribunal for ascertaining the compensation and made provision for paying the compensation when ascertained.

6. SAME — INJUNCTION REFUSED.

The act of congress having provided that any judgment of the court of claims in favor of any claimant should be paid as other judgments of that court, although it is possible that congress may prevent payment to the complainant by failing to vote the necessary appropriation for that purpose, *held,* that this case is not one in which the court should interfere by injunction, the appeal having been filed 18 months after extensive works had been begun by the United States, and at a time when arresting the work would cause the sacrifice of very large expenditures; and it appearing that as the property taken from complainant was vacant, unimproved, and of no present use to any one except the United States, the complainant's position is not one of hardship.

In Equity.

*G. M. Robeson, Benj. F. Butler,* and *O. D. Barrett,* for complainant.

*John Goode,* Sol. Gen., for defendant.

MORRIS, J. This motion for preliminary injunction is made upon a bill filed by the Great Falls Manufacturing Company, a corporation of the state of Virginia, against Augustus H. Garland, a citizen of Arkansas, now attorney general of the United States; William C. Endicott, a citizen of Massachusetts, now secretary of war of the United States; Garrett J. Lydecker, a citizen of New York, now ma-

[1] Affirmed. See 8 Sup. Ct. Rep. 631.

jor of engineers in the United States army; George B. Chittenden and Samuel H. Chittenden, citizens of the United States, now dwelling in the state of Maryland, contractors with said secretary of war for the building of a dam and other structures across Conn's island, and across the Potomac river from Conn's island to the Virginia shore, and for the building of other structures and works in connection therewith on land alleged to belong to the complainant near the Great Falls of the Potomac river, in Maryland.

The complaint of the bill is that by virtue of a supposed authority granted by an act of congress approved July 15, 1882, entitled "An act to increase the water supply of the city of Washington, and for other purposes," "the secretary of war of the United States has taken possession of Conn's island, belonging to the complainant, and of other land and water-rights in the Potomac river belonging to the complainant, and through his agent, the said Lydecker, major of engineers, and through the said contractors, George B. & Samuel H. Chittenden, is occupying the same and building thereon a dam and other structures in disregard of complainant's ownership of said lands and water-rights, and is occupying said land with sufficient force to prevent any opposition without a breach of the peace of the state of Maryland."

The want of lawful warrant for the acts complained of is by complainant's bill put upon the ground, (1) the unconstitutionality of the act of congress of July 15, 1885; and, (2) conceding the constitutionality of the act, upon the failure to pursue its terms. The act, so far as it affects the property of the complainant, provides that the secretary of war shall cause to be made a survey and map of "the land necessary for a dam across the Potomac river at Great-Falls, including the land now occupied by the dam, and the land required for the extension of said dam across Conn's island to and upon the Virginia shore; and when surveys and map shall have been made, the secretary of war and the attorney general shall proceed to acquire to and for the United States the outstanding title, if any, to said land and water-rights." It is further provided that if it shall be necessary to resort to condemnation, the proceedings shall be as follows:

"When the map and survey are completed, the attorney general shall proceed to ascertain the owners or claimants of the premises embraced in the survey, and shall cause to be published for the space of 30 days in one or more of the daily newspapers published in the District of Columbia a description of the entire tract or tracts of land embraced in the survey, with a notice that the same has been taken for the uses mentioned in this act, and notifying all claimants to any portion of said premises to file, within the period of publication, in the department of justice, a description of the tract or parcel claimed and a statement of its value, as estimated by the claimant. On application of the attorney general the chief justice of the supreme court of the District of Columbia shall appoint three persons not in the employ of the government or related to the claimants to act as appraisers, whose duty it shall be, upon receiving from the attorney general a description of any tract or parcel the ownership of which is claimed separately, to fairly and justly value the same

and report such valuation to the attorney general, who thereupon shall, upon being satisfied as to the title to the same, cause to be offered to the owner or owners the amount fixed by the appraisers thereof, and if the offer be accepted then, upon the execution of a deed to the United States in form satisfactory to the attorney general, the secretary of war shall pay the amount to such owner or owners from the appropriation made therefor in this act.  *  *  * Any person or corporation having any estate or interest in any of the lands embraced in said survey and map, *who shall for any reason* not have been tendered payment therefor as above provided, or who shall have declined to accept the amount tendered therefor, *and any person* who, by reason of the taking of said land, or by the construction of the works hereinafter directed to be constructed, shall be directly injured in any property right, may, at any time within one year from the publication of notice by the attorney general, as above provided, file a petition in the court of claims of the United States, setting forth his right or title, and the amount claimed by him as damages for the property taken or injury sustained, and the court shall hear and adjudicate such claims in the same manner as other claims against the United States are now by law directed to be heard and adjudicated therein: provided the court shall make such special rules in respect to such cases as shall secure their hearing and adjudication with the least possible delay."

"Judgments in favor of said claimants shall be paid as other judgments of said court are now directed to be paid."

"Upon publication of the notice as above directed, *the secretary of war may take possession of the premises embraced in the survey and map, and proceed with the construction herein authorized.*"

"Sec. 2. That the secretary of war be, and he is hereby, authorized and directed to  *  *  *  complete the dam at Great Falls to the level of 148 feet above tide, and extend the same at that level across Conn's island to the Virginia shore.

"The following sums, or so much as may be necessary, are hereby appropriated out of any money in the treasury not otherwise appropriated:  *  *  * To pay for water-rights and land necessary to extend dam at Great Falls to the Virginia shore, $45,000."

The grounds upon which the constitutionality of this act of congress is attacked, are thus stated in complainant's bill:

"And your complainant is informed and believes, and therefore avers, that even if the provisions of said act were ever so strictly followed by said attorney general and said secretary of war, and their servants and agents, and their acts done in the premises in strict accordance therewith, yet their said acts and doings, as regards your complainant, would not be justified in law, because said act is unconstitutional, and void in its provisions in these: (1) Said act makes no provisions by which reasonable compensation for the property taken for public use under its provisions can be constitutionally and lawfully adjusted and determined. (2) It does not provide that the compensation in its amount shall be ascertained by a verdict of a jury, which is a constitutional right of your complainant. (3) The act has provided that whatever wrong and injury may be done to your complainant in carrying on this public work, or in taking its land and water for such purpose of public use, that the only tribunal to which your complainant is compelled to have recourse for the adjudication of its rights is the court of claims, which is a court unknown to the constitution, being neither a court of equity, such as was known to our ancestors at the time of the ratification of the constitution, nor a court of common law, as said court does not proceed, by its constitution, in the determination of cases according to the rules of the common law as known and practiced at the time aforesaid. (4) That said court of claims is

not other and different from a board of referees constituted by one party to hear and determine such cases as another party will consent to submit to judgment thereby, and even such judgment is not authoritative or binding against the party that chooses the board of referees. In addition to this, said act makes a limitation on the power of the referees to enforce any judgment against the United States, because it enacts that judgments of these referees, to whom the act compels those whose property is taken for public use alone to resort, shall be paid as other judgments of said board of referees are to be paid,—only when the judgment debtor pleases to pay them; *i. e.* pleases to make an appropriation for that purpose. (5) In this, that the act directs property to be taken and entered upon, and the owner dispossessed therefrom, without any provision by which the compensation for taking said property can be paid, and this is done when neither the act nor the surrounding facts show any need of haste in so doing, or any necessity which requires that property be taken until after an appropriation at least has been made for compensation for so doing."

With regard to the claim that complainant is entitled to have his compensation assessed by a jury, it has been so often decided that this is not a constitutional requisite that it cannot be any longer regarded as an open question. In condemnations of private property for public use in the exercise of the right of eminent domain, neither by the provisions of the constitution of the United States guarantying the right of trial by jury in common-law cases, nor under the provision forbidding a citizen being deprived of his property without due process of law, nor under similar provisions in the constitutions of states, has it been held that a trial by jury is requisite. Cooley, Const. Lim. 563. In Mills, Em. Dom., it is stated that at the time of the adoption of the federal constitution it was the practice to assess condemnation damages by commissioners, arbitrators, or any other impartial tribunal. The language of the supreme court in *U. S.* v. *Jones*, 109 U. S. 519, S. C. 3 Sup. Ct. Rep. 350, would seem conclusive of this point. The court says:

"The proceeding for the ascertainment of the value of the property, and consequent compensation to be made, is merely an inquisition to establish a particular fact as preliminary to the actual taking; and it may be prosecuted before commissioners or special boards, or the courts, *with or without the intervention of a jury*, as the legislative power may designate. All that is required is that it shall be conducted in some fair and just manner, with opportunity to the owners of the property to present evidence as to its value, and to be heard thereon."

And in *Kohl* v. *U. S.*, 91 U. S. 375, speaking of a condemnation of land by the United States for public purposes, the supreme court said:

"Doubtless congress might have provided a mode of taking the land and determining the compensation to be made which would have been exclusive of all other modes. They might have prescribed in what tribunal or by what agents the taking and the ascertainment of the just compensation should be accomplished. The mode might have been by a commission, or it might have been referred expressly to the circuit court; but this, we think, was not necessary. The investment of the secretary of the treasury with power to obtain the land by condemnation, without prescribing the mode of exercising

the power, gave him also the power to obtain it by any means that were competent to adjust a condemnation."

And, discussing the question whether the proceeding was such an one as came within the general jurisdiction granted to the circuit courts, the supreme court says:

"The right of eminent domain always was a right at common law. * * * *That it was not enforced through the agency of a jury* is immaterial, for many civil as well as criminal proceedings at common law were without a jury."

The contention of the complainant in this case, that the act of congress is unconstitutional because it does not provide for the ascertainment of the value of the property taken through the verdict of a jury, cannot be maintained. And we think it equally clear that there is no valid objection to the court of claims as a proper impartial tribunal, designated by the act, and possessed of all the requisite means to investigate and determine all the questions which can arise in respect to the complainant's claim.

The other objections,—that the court of claims cannot render a judgment which can be enforced against the United States, and that, therefore, no adequate and certain remedy is provided by which the complainant can compel payment,—and the objection that the secretary of war was authorized to take possession of the property as soon as the survey and map and publication of the notice thereof was made, we will consider hereafter.

We will next examine the grounds upon which it is urged that the acts of the officers of the government are invalid because the terms of the act have not been pursued. The complainant by its bill of complaint alleges:

"And your complainant is informed and believes, and therefore avers, that the secretary of war and the attorney general of the United States, claiming to act under and according to the provisions of said act to increase the supply of water to the city of Washington, and for other purposes, did not proceed to act in accordance therewith, or do the things requisite to enable said lands to be taken by the United States under the exercise of the right of eminent domain, by the omission to do certain acts required to be done before said taking, and omitting to do the acts necessary for the legal taking of said lands and protecting the rights of your complainant and securing to it reasonable compensation for the property taken, as required by the constitution of the United States.

"(1) They did not 'proceed to acquire, to and for the United States, the outstanding title to said lands and water-rights' of your complainant.

"(2) They resorted to condemnation of said lands and water-rights, when it was unnecessary so to do, and without notifying or calling on your complainant to consent to the acquiring said lands and water-rights to and for the United States.

"(3) The attorney general did not proceed, before condemnation was attempted, to ascertain the owners or claimants of said lands of your complainant.

"(4) No survey or description of the water-rights attempted to be condemned was made, or published or inserted in any newspaper, as a proceeding precedent to said condemnation, nor was any determination arrived at by said attorney general or by any other person as to the amount of said water-

rights or water in said river which was to be condemned, nor did he give notice as to how much water was to be so taken by condemnation, whether a part or the whole of said river, so that the appraisers of the value thereof, provided for by said act, could not appraise the water to be taken. On the contrary, the only claim made by the said attorney general as to said land and water-rights, or notified to your complainant by publication or otherwise, was contained in a newspaper publication in the words and figures following: 'In addition to acquiring to and for the United States [*sic*] any outstanding title to these lands at the Great Falls, it is also proposed to acquire all water-rights implied in the possession of the same, or needed for the purposes contemplated by the act under which these proceedings are taken. The map of the surveys (in three tracings) required for the uses enumerated in the above-named act of 1882, *c*. 294, may be seen at this department by all claimants to any portion of said premises.'

"And your complainant says there is no intimation in said publication that said attorney general and said secretary of war were resorting to condemnation of said water-rights or the land of your complainant at the Great Falls, because your complainant says, by the very terms of said publication, it was notified, not that its lands and water-rights were to be condemned, but that 'in addition to acquiring to and for the United States [*sic*] any outstanding title to these lands at the Great Falls it is also *proposed to acquire* all water-rights implied in the possession of the same, or needed for purposes contemplated by the act under which these proceedings are taken.' "

"(7) And your complainant was misled by said notice as to whether it was intended to condemn its said land and water-rights, whereas the notice required by said act, when it became necessary to resort to condemnation of lands and water-rights, must ' give a description of the tract or tracts of land embraced in the survey, with notice that the same *has been taken* for the uses mentioned in this act,' thus notifying all claimants to any portion of said premises to file, within its period of publication, in the department of justice, a description of the tract or parcel claimed, and a statement of its value as estimated by the claimant.

"And your complainant avers that it was impossible to comply with such notice as was given, or give any discription of water or water-rights taken, which those taking had never described even by specifying the quantity of water they desired to take during a given time, which is the usual and customary mode when water is to be diverted from a stream or river for a public use; that is to say, so many gallons or cubic feet by the minute, the hour, or the day.

"And your complainant says that it was quite as impossible for it to comply with the statute under such a notice 'by filing a statement of the value estimated by the claimant' of an unknown quantity of water, which the attorney general proposed to acquire.    *    *    *

"And your complainant is informed and believes, and therefore avers, that the attorney general, although he applied to the chief justice for the appointment of three persons to act as appraisers, as provided in said act, did not give them any description of any tract of land the ownership of which is claimed severally, belonging to your complainant, that said appraisers might fairly and justly value the same, or any water-rights, or intimation of water to be taken, nor did said appraisers value either land or water-rights belonging to your complainant, nor has any amount been offered to your complainant therefor.

"And your complainant is informed and believes, and therefore avers, that no proper legal steps, as required by statute, were duly taken by said attorney general and secretary of war, or either of them, or have been by their successors, or either of them, in said offices, which are requisite and necessary for the condemnation of said lands, or taking the same in due manner and form

for public use, or for making compensation or causing compensation to be made therefor to your complainant.

"And your complainant is also informed and believes, and therefore avers, that your complainant waited, after several applications, both verbally and in writing, by its chief executive officer, made to said attorney general and secretary of war, till the last day before the expiration of the year limited by said act in which claims might be filed for damages under said act in the court of claims, hoping and expecting some steps might be taken by which the land and water-rights belonging to your complainant might be legally taken by the United States in such form that your complainant might obtain reasonable compensation for its property taken, and, nothing being done, from great caution and fear lest the complainant might lose all benefit of any provision of said act by limitation, it then filed a petition setting forth its claim in order to save the rights of your complainant, and for no other purpose whatever.

"And your complainant protests that it believes that no sufficient steps have been taken in this regard to give said court of claims jurisdiction in the premises, because your complainant says all said acts of said attorney general and secretary of war, and other servants of themselves and the United States, in and about said lands and in the premises, were not justified by act of congress, and therefore are simple trespasses and wrongs done to your complainant, because of which, and the injuries inflicted thereby, said court of claims has no jurisdiction whatever.

"And your complainant is informed and believes, and therefore avers, that although no notice of any taking has been given in the manner prescribed by law. and although no act has been done which would justify him in so doing, the secretary of war in the year 1883, by his servants, wrongfully took possession of the lands of your complainant, claiming to have done so in behalf of the United States, in the state of Maryland and in Virginia, which land was not within any description made, surveyed, or traced by the secretary of war, and has used said land for the purpose of constructing a dam along a portion of said land across Conn's island, and over said river to the Virginia shore, and has built a large portion of said dam by means of his said servants and agents without making any bulkhead in said dam, or any provision whatever by which your complainant can use any portion of the water for manufacturing or other valuable purposes, as was awarded by the arbitrators in their award as aforesaid in favor of your complainants, the dam to be constructed after the manner of plan A."

With regard to the objection that no survey was made, and no description of the water-rights designed to be appropriated, and no proper legal steps taken to condemn the lands and water-rights of the complainant, so as to condemn the same and to give jurisdiction to the court of claims in respect to complainant's claim, we think it does sufficiently appear from the documents and plat exhibited to the court that a proper and intelligible survey was made and placed where it was accessible to the complainant's officers, and was seen by those representing it, and that notice was published as directed by the act, calling attention to the survey and map, sufficiently describing the property of complainant which it was proposed to appropriate. We think it also appears that the agents of the complainant had actual notice of all these matters, and the bill itself alleges in substance that they were the basis of several interviews between the complainant's agents and the secretary of war and the at-

torney general, in which the complainant made suggestions of a settlement of its claims which would have been accepted as satisfactory to it, but which the secretary did not feel authorized to accept.

The objection most strongly urged is the alleged insufficiency of the notification with regard to the water-rights, because the advertisement states generally that, in addition to the title to the land, it was proposed to acquire "all water-rights implied in the possession of the same, or needed for the purposes contemplated by the act;" the objection being that the notice did not state how much water it was proposed to divert from the Potomac river for the use of the proposed increased water supply, and that, therefore, it was impossible for the complainant to comply with the exigency of the notice and of the act of congress, which required the complainant to file in the department of justice a statement of the value of the property taken as estimated by the complainant.

There are two things definitely stated in the advertisement, and ascertainable from the survey and map. One is the quantity of land to be appropriated, and the other the nature and extent of the constructions to be placed on it, and the height of the dam to be erected. The number of gallons of water to be diverted daily is not stated, but we think could be calculated from these *data* with sufficient accuracy for all *practical* purposes, looking to the circumstances of this case, and with reference to so large a body of water with so great a flow as the Potomac river at the Great Falls.

It is also contended that the entry upon complainant's land was without warrant, because the attorney general did not first have the land valued by appraisers, and did not offer the complainant the amount fixed by the appraisers. The various difficulties which, in the opinion of the officers of the government, attended the making of such an appraisement of the value of the land, water-rights, and water which were taken from the complainant, and which, in their judgment, made it futile to attempt such a valuation, were mentioned in argument. Whether or not they were sufficient to dispense with an appraisement it does not seem to us material to consider, as we think that the survey and map and published notice were sufficient to make a case under the act of which the court of claims could take jurisdiction, and that the complainant, by filing its claim in that court, asking compensation for the land, water-rights, and water appropriated, waived all objection to the preliminary steps for estimating that compensation. The act prescribes that the complainant may file such a claim, *if for any reason* the claimant shall not have been tendered payment or shall have declined to accept the amount tendered. It seems to us, therefore, that the complainant is now rightfully before a tribunal which can hear and adjudicate its claims, which can consider the testimony of its witnesses, pass upon its titles and pretentions with respect to the water to be diverted from the river, and award the just compensation to which the complainant is entitled.

It seems to us apparent that the agents of the complainant knew what the United States proposed to appropriate, and were negotiating with the officers of the government up to the time of filing the claim in the court of claims with regard to a proper settlement of the amount of compensation, and could not agree with them. All, then, that was intended to be accomplished by the act in order to bring about an agreement and purchase, if possible, was attempted and failed, and we think that all that was necessary to give jurisdiction to the court of claims was done, and the case is now in that court for determination, just as the act of congress intended it should be if the parties could not agree as to the amount to be paid in compensation; and as the filing of the claim was the act of the complainant, we know of no reason why it should not be held a waiver by it of merely formal antecedent matters.

It remains then to consider whether the act of congress is unconstitutional, and the employes of the government trespassers, because, without having paid the compensation, and without completing the proceedings to ascertain the amount of compensation, possession was taken of the premises embraced in the survey, and the construction of the work proceeded with. In Cooley, Const. Lim. 560, it is said to be the rule deducible from adjudged cases that unless there is some constitutional or legislative requirement, it is not essential to the validity of a law for the exercise of eminent domain that provision should be made for payment of compensation before the actual taking of the property, where the taking is by the sovereign power itself; and that when the taking is by the state itself, not by a private corporation under authority from the state, it is sufficient if provision is made by the law by which the party whose property is taken can obtain compensation, and an impartial tribunal provided for assessing it. The same rule is given as the result of the authorities in Mills, Em. Dom. § 126, and in Potter's Dwar. St. 391.

It must be acknowledged that this doctrine goes to the verge of what can be sanctioned without destroying the essential right of the citizen to have just compensation secured to him before his property is entered upon and he is dispossessed. But there are numerous cases reported in which the courts have relaxed the strict rule applicable to private corporations in favor of the sovereign power itself, where the legislature has deemed the importance and urgency of the public use sufficient to call for taking the property before the compensation is ascertained, and where the solvency of the state was undoubted, its good faith unquestioned, an adequate method of ascertaining the compensation provided, which the party could pursue of his own motion, and the delay in payment only caused by the unavoidable checks and precautions with regard to payments and expenditures of public moneys. *Haverhill Bridge Co.* v. *County Com'rs,* 103 Mass. 125.

v.25F,no.9—34

The present case is one in which all the reasons which have induced the courts to relax the rule requiring payment to precede entry apply very strongly. The land and water-rights of the complainant in question were not and never have been used in any beneficial manner whatever, but have remained unimproved and vacant. The complainant admits that it is willing and anxious to sell to the United States whatever of its property and rights may be required for the proposed water supply, in order that it may get the price, and also in order that it may hold the balance of its property unclouded by the uncertainty as to how much may be required for this public work, which it is obvious sooner or later must be carried out. All the complainant desires is to obtain payment for what it does not now use itself, and which it is clear the government ought to take. The officers of the government, knowing that in any event the water supply must be taken from the Great Falls of the Potomac, without waiting for the completion of the proceedings by which the compensation was to be ascertained, proceeded, as directed by the act of congress, to construct the dam and other works. This application for injunction is made some 18 months after these works were commenced, and after contracts have been made, costly coffer-dams put down in the river, and other expensive preparations made for pushing the work during the summer months. If the injunction should now issue, and the work be interrupted until the meeting of congress, much of this large expenditure will be sacrificed. Without therefore undertaking to sanction any rule by which, in general, property may be taken into possession without compensation first being made, even when not expressly forbidden by constitutional or legislative provision, it does seem to us that this is a case in which we should decline to interfere by injunction at this time, if the means provided by the act of congress to ascertain the amount of compensation are adequate and proper, and the payment of the amount, when ascertained, reasonably provided for and assured.

The only remaining question then is as to the provision of the act of congress that the "judgment of the court of claims in favor of the claimants shall be paid as other judgments of said court are now directed to be paid;" that is to say, the judgment may be paid out of any appropriation made by congress for the payment of such claims as have been established by that court. It is urged that after the judgment of the court of claims has been obtained, the failure of congress to pass a law appropriating money to pay the judgment would defeat the complainant's efforts to get payment for its property. This is true. But it is also true that congress always has heretofore appropriated the money required to pay the judgments of the court of claims; and as it has specially designated that court as the tribunal to ascertain what amount shall be paid to the complainant, nothing but a flagrant breach of good faith could delay the payment. The possibility of such action on the part of congress, under all the cir-

cumstances of this case, we do not think sufficient to justify the issuing of a preliminary injunction. If the complainant is so advised, this cause may be continued, so that hereafter, if it should indeed prove to be true that a certain and adequate provision has not been made for payment of the amount which shall be ascertained to be due to the complainant, the further action of this court may be invoked.

The application for a preliminary injunction is denied.

BOND, J., concurred.