# McDonough, Appellant, *v.* Gensemer.

*Boroughs—Annexation of land—Petitioners—Ownership of lands.*

Persons cannot be considered as freehold owners of lots in determining whether a majority of such owners had petitioned for the annexation of land to a borough, where it appears that such persons merely claimed to own a strip of land which was in actual possession of a railroad company, where there is no proof of their ownership by deed, will or otherwise, and the evidence shows that the strip of land in question had been in the uninterrupted and undisputed possession of the railroad company for over thirty years, and that the company had entered on the land in the exercise of its right of eminent domain, and had filed a bond to secure damages payable to the owner.

Argued Dec. 6, 1911. Appeal, No. 232, Oct. T., 1911, by plaintiffs, from decree of C. P. Schuylkill Co., May T., 1911, No. 1, dismissing bill in equity in case of L. F. McDonough et al. v. George W. Gensemer et al., Councilmen of Pinegrove Borough, and the Borough of Pinegrove. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction. Before SHAY, P. J. The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*R. S. Bashore*, with him *F. G. Farquhar* and *S. M. Enterline*, for appellants.—The railroad company took part of the Wheeler land by right of eminent domain. This gave

them only an easement and left the title where it had been before, to wit, in the nine Wheeler heirs: Pittsburg & Lake Erie Railroad Company v. Bruce, 102 Pa. 23.

*E. P. Leuschner*, with him *F. V. Filbert*, for appellees. —In absence of better proof, the presumption is that the railroad company owns the fee, and even though it had been taken under the Act of February 19, 1849, P. L. 79, known as the general railway law, it has been repeatedly decided that under such circumstances the estate acquired by a railroad company is more than a mere easement or right of way: Pennsylvania Schuylkill Valley Railroad v. Paper Mills, 149 Pa. 18; Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Peet, 152 Pa. 488; Philadelphia v. Ward, 174 Pa. 45.

OPINION BY PORTER, J., March 1, 1912:

The defendant borough, upon the petition of a number of the freehold owners of lots in a section of land adjacent to the borough, had by ordinance declared the admission of such section of land to the borough, and filed in the court of quarter sessions of the county the plans and records required, under the provisions of the Acts of April 22, 1903, P. L. 247, and March 21, 1907, P. L. 25. The plaintiffs then filed in the court of common pleas this bill in equity, averring that the petition to the borough council praying the annexation of the territory had not been signed by a majority of the freehold owners of lots in the territory annexed, and praying that the ordinance of annexation be decreed to be null and void. The respondents filed an answer averring that the petition had been signed by a majority of the freehold owners of lots in the territory in question, and the plaintiffs filed a replication joining issue in the matters alleged in the answer. The parties produced at the hearing testimony tending to throw light upon the number and identity of the owners of lots in the territory affected by the proceeding. The learned judge of the court below made separate and distinct find-

ings of fact as to the individuals whose character as freeholders of the district was in dispute between the parties, and arriving at the conclusion that the petition had been signed by a majority of the freehold owners of lots, he dismissed the bill. The plaintiffs appeal from that decree.

There is no necessity for considering the assignments of error in detail. The appellants concede that the petition was signed by thirty-eight duly qualified freehold owners of lots in the section of land annexed to the borough. They assert that the total number of such freehold owners of lots in the district at the time of the annexation was eighty-four. If the evidence established that there were eighty-four freehold owners of lots and the petition was only signed by thirty-eight of such owners the council of the borough had no jurisdiction to ordain the annexation of the district, and the plaintiffs were entitled to the relief for which they prayed. But in order to make up the eighty-four freehold owners of lots they count as nine the widow, the children and the grandchildren of Guy Wheeler, deceased. The only evidence which they offered in support of their contention that these nine persons should be counted as freehold owners of lots in the territory annexed was the oral testimony of F. B. Wheeler, one of the heirs of Guy Wheeler. He said, "We claim title to the land upon which that railroad lies there; but the railroad has possession of it." He referred to the Schuylkill & Susquehanna Railroad, which had been constructed more than thirty years earlier and the tracks of the railroad company had been maintained upon it during all of that period. He explicitly testified that the only ground which they claimed was the strip upon which the railroad company maintained its tracks. He testified that the company had taken it in the exercise of the right of eminent domain, before Guy Wheeler had acquired any title to it, and while it was in possession of a former owner. He further testified that neither Guy Wheeler nor any of his heirs had ever been in possession of this strip of land. He testified that the rail-

road company never had paid the former owner for the land, and that seems to have been the only ground upon which he thought he and the other heirs of Guy Wheeler had any interest in the land. The sum of this testimony, assuming it to be true, is that the railroad many years ago took this strip of land in the exercise of the right of eminent domain, when the land was owned by some person with whom the Wheelers had no connection. Neither Guy Wheeler nor any of his heirs ever have been in possession of this strip of land. When the railroad company entered under the right of eminent domain and filed its bond that divested the title of the former owner, whoever he was, and in order to obtain compensation for his land which had been thus taken he could only look to the bond. "The estate acquired by a railroad company by a condemnation of land is often spoken of as an easement, but the term is used in a loose way for the purpose of distinguishing it from a fee:" Pitts., Ft. Wayne & Chicago Railway Co. v. Peet, 152 Pa. 488. "It would seem to be rather a fee in the surface and so much beneath as may be necessary for support, though a base or conditional fee, terminable on the cesser of the use for railroad purposes:" Penna. Schuylkill Valley Railroad Co. v. Paper Mills, 149 Pa. 18; Philadelphia v. Ward, 174 Pa. 45. But no matter what the nature of the interest in the land which remained in the former owner, after the exercise of the right of eminent domain by the railroad company, the burden was upon these appellants to show that the nine persons alleged to have succeeded to the rights of Guy Wheeler, if he had any rights, were freehold owners of lots in the district in question. The only witness called by them testified that neither Guy Wheeler nor any of his successors had ever been in possession of the land. All that he testified to was that they claimed the land. The plaintiff did not see fit to inquire how that claim arose, whether by deed, will or otherwise. They produced no deed, will or other evidence tending to show title to this strip of land or any land thereon abutting, in Wheeler or any person under whom he

claimed.  They did not attempt to show under whom he claimed.  The Wheelers never having been in possession, it was incumbent on the appellant in this proceeding to do more than merely show that they claimed the land, they should have produced evidence tending to establish that the claim was well founded.  The conclusion of the court below that the widow and heirs of Guy Wheeler, deceased, being nine in number could not, under the evidence presented, be held to be freehold owners of lots, was free from error.  Striking these nine persons from the list counted by the appellants in making up the number of eighty-four freeholders for which they contend, leaves only seventy-five.  The appellants admit that thirty-eight duly qualified freehold lot owners signed the petition, and as that is a majority of seventy-five it is not necessary to consider whether the other nine persons who signed the petition, making in all forty-seven, were or were not duly qualified freehold lot owners.

The decree is affirmed and the appeal dismissed at cost of the appellants.