UNITED STATES v. O'NEILL et al.

(District Court, D. Colorado. August 19, 1912.)

No. 5,859.

1. EMINENT DOMAIN (§ 29*)—LANDS TAKEN FOR PUBLIC USE—GOVERNMENT IRRIGATION PROJECT.

Lands condemned by the United States under Reclamation Act June 17, 1902, c. 1093, § 7, 32 Stat. 389 (U. S. Comp. St. Supp. 1911, p. 666), for right of way for a canal or ditch required in the carrying out of an irrigation project, are taken for a public use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 76; Dec. Dig. § 29.*]

2. EMINENT DOMAIN (§ 5*)—CONDEMNATION UNDER RECLAMATION ACT—PROCEDURE.

The power conferred on the Secretary of the Interior by Reclamation Act June 17, 1902, c. 1093, § 7, 32 Stat. 389 (U. S. Comp. St. Supp. 1911, p. 666), to condemn lands necessary for use in constructing irrigation works, is not subject to limitation by state statutes relating to the exercise of the power of eminent domain of the state, nor is its exercise governed by a state procedure requiring the necessity of the taking in each particular case to be determined by a local commission, but such necessity is a matter to be determined by the Secretary, whose decision is not reviewable by the courts.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 19–23; Dec. Dig. § 5.*]

3. EMINENT DOMAIN (§ 74*)—PROCEEDINGS UNDER RECLAMATION ACT—RIGHT TO TAKE POSSESSION.

In proceedings by the United States to condemn right of way for a ditch under Reclamation Act June 17, 1902, c. 1093, § 7, 32 Stat. 389 (U. S. Comp. St. Supp. 1911, p. 666), which provides a fund from which the damages assessed shall be paid, it is not necessary that the damages shall be assessed and paid before the government may be allowed to take possession.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 188–197; Dec. Dig. § 74.*]

Condemnation proceedings by the United States against Jesse O'Neill and James O'Neill. On motion by plaintiff for an order for possession. Motion sustained.

Ethelbert Ward, of Denver, Colo., for petitioners.
Catlin & Blake, of Montrose, Colo., for defendants.

LEWIS, District Judge. This is a proceeding in condemnation. From the petition, answer and reply these facts appear: The plaintiffs have been engaged for the past several years in the construction of an irrigation system in the Uncompahgre Valley, in Montrose and Delta counties. It is in charge of the Secretary of the

Interior under authority vested in him by the reclamation Act, approved June 17, 1902 (32 Stat. 388), and is known as the Uncompahgre Valley project. Up to this time about five million dollars has been expended in its construction, but it is not completed. It diverts a large body of water from the Gunnison River through a long tunnel into the Valley, whence it is taken in large canals, from which it is received into smaller canals and from them carried in distributing ditches to the arid acres to be reclaimed. At some places water is turned into small creeks, or other natural drainage ways, and taken therefrom lower down in canals or ditches for carriage and ultimate distribution. It is expected by those in charge for the Government that the system when brought to completion will reclaim about 140,000 acres of dry lands and render them highly productive. The particular part of the system with which we are here concerned is known as ditch D, or the Spring Creek lateral, by which it is intended to take out of Spring Creek, a part of the waters turned into said creek from a canal higher up, and conduct the same for about five miles for the reclamation of some eight hundred acres. Starting at the head of this ditch, about three-quarters of a mile of its course, as projected, is across improved and occupied lands of defendants. That part of it has been surveyed, but no construction work has been done thereon, for the reason that petitioners have been unable to come to terms with the defendants therefor, and consequently this proceeding is for the purpose of acquiring the right thereto by condemnation. Construction work on the remainder of the line of this ditch has been finished.

The defendants resist the attempt of plaintiffs to thus acquire a right of way across their lands. They admit that they were unable to agree on a consideration therefor. They plead two matters in defense, the sufficiency of which must be determined now,—both raising the question of necessity. The first is stated in the answer thus (p. 10):

"Plaintiffs have laterals from their own irrigation system, surveyed, platted and constructed from which they can carry and distribute water upon every acre of land that is covered by said Spring Creek canal (ditch D), and from which distribution and delivery will be and is, wholly feasible and practicable, and that the said proposed Spring Creek canal is wholly unnecessary;"

and in support of this defense they rely upon a state statute, being section 2420, R. S. Colo., 1908, found in the chapter on Eminent Domain, which, in part, is as follows:

"The court or judge * * * shall appoint a board of commissioners of not less than three freeholders to ascertain and determine the necessity for taking such lands. * * *"

Their said second defense is stated in their answer thus (p. 3):

"That many years prior to the filing of the petition herein, to wit, ever since on or about February 24, 1891, there has been constructed and in operation across the lands of defendants sought to be subjected to the burden of a right of way by plaintiffs herein a ditch for the conveying of water from Spring Creek to lands lying beyond the lands of defendants, and ever since

said time said ditch has been in operation and has carried the waste, seepage and spring water across the lands of defendants to lands lying beyond for irrigation purposes. That the irrigation of all of the lands adjoining and lying beyond the lands owned by defendants and across which plaintiffs desire to secure a right of way can practicably and feasibly be attained by enlarging the ditch now constructed and in operation across the lands of defendants. and known as the Blye & Hall ditch. That all of the water that is necessary to irrigate the lands sought to be irrigated by plaintiffs can be carried through said Blye & Hall ditch by enlarging the same by the plaintiffs herein. That defendants herein have offered the said plaintiffs the right to enlarge said Blye & Hall ditch, as now constructed, to carry the water necessary to irrigate the lands lying beyond defendants' lands sought to be irrigated and reclaimed by plaintiffs free of any charge, except the retaining by defendants of the water to which they are entitled under their filings and appropriations under the Blye & Hall ditch, and defendants stand ready and willing at this time to deed to plaintiffs a right of way across defendants' lands from Spring Creek along the line of the Blye & Hall ditch, as constructed and filed, free of any charge for such right of way except that defendants' water rights as now existing and enjoyed by them be recognized and the water to which they are entitled (11.32 second feet) to run through such Blye & Hall ditch and delivered to them;"

—and in support of this defense defendants rely on section 2420, supra, and also on section 3170, R. S., Colo., 1908, being a part of the state act on Irrigation, as follows:

"That no tract or parcel of improved or occupied land in this state, shall, without the written consent of the owner thereof, be subjected to the burden of two or more irrigating ditches constructed for the purpose of conveying water through said property, to lands adjoining or beyond the same, when the same object can feasibly and practicably be attained by uniting and conveying all the water necessary to be conveyed through such property in one ditch."

There are other facts set up in the answer as a claimed defense against the right to condemn, but, as I am of the opinion that they are material only on the measure of damages, they cannot be considered now, but must stand over for that inquiry.

The petitioners move for immediate possession. The motion is resisted. On the hearing of the motion petitioners presented the affidavits of four persons, from which it appears that they are fully informed of the situation, and they depose that the selected line of ditch D, of which the segments here sought in condemnation are a part, is a necessary route and that no other is practicable to serve the contemplated purposes. One of them deposes that he has known the Blye & Hall ditch for the past eight years and that it has not been maintained or operated or carried any water whatever during that time; that along portions of its claimed route there are no traces of it on the ground; that there is nothing on the ground to indicate that it was ever constructed between points marked "Intake 1" and "Intake 2" on exhibits attached, and that it has no headgates or intakes.

The defendants presented the affidavit of one person. He deposes that the Blye & Hall ditch with enlargements will be feasible for the same purpose in contemplation by the petitioners for their ditch and that it would carry water to the lands intended to be served by ditch D, except the strip between the two.

Neither side presented affidavits touching the first defense above noted, but arguments were made thereon based on exhibits that were presented and filed.

The lands sought consist of two disconnected segments, as shown by the maps, along the line of the proposed ditch, fifty feet in width and less than one mile in total length, and a small rectangular tract at the proposed headgate, one hundred feet long by seventy-five feet wide, covering both banks of Spring Creek.

[1] 1. Express authority for this proceeding is given by section 7 of the reclamation Act (32 Stat. 388). That Act and the facts here amply disclose that the purpose for which petitioners seek to condemn and take these lands is a public purpose. Burley v. United States, 179 Fed. 1, 102 C. C. A. 429, 33 L. R. A. (N. S.) 807. The State constitution, statutes and Colorado decisions also declare it to be a public purpose. Colo. Const. art. 16, § 7; R. S. Colo. 1908, § 3169. This is not denied by the defendants.

[2] 2. Defendants do not question the necessity of a way to convey the waters from Spring Creek to the lands to be reclaimed; nor do they claim that more land is sought to be taken than is necessary for the construction and maintenance of the ditch if it is to be put through; nor that the proposed ditch is impracticable for the purpose in view; nor that it should be constructed on some other route. I understand them to concede that under the local rule these matters, in so far as they involve the element of necessity for the taking, are not open to judicial inquiry and determination. Gibson v. Cann, 28 Colo. 499, 66 Pac. 879; Railroad Co. v. Telegraph Co., 30 Colo. 133, 69 Pac. 564, 97 Am. St. Rep. 106; Warner v. Town of Gunnison, 2 Colo. App. 431, 31 Pac. 238.

Their position in this regard is two-fold: first, a canal or ditch has already been constructed as a part of the project, from a point on the creek upstream, traversing in its course higher lands, but through which and the lower end of ditch D the same waters can be conducted to the lands; and, second, there is now a private ditch across defendants' lands through which the waters may be taken and applied as proposed, therefore there is no necessity for the upper end of this ditch, and consequently their lands cannot be condemned and taken. Both contentions are based on section 2420 of the State statute, and the construction placed thereon by the courts. Sand Creek Co. v. Davis, 17 Colo. 326, 29 Pac. 742; Kern v. Minekine, 45 Colo. 378, 101 Pac. 341; Broadmoor Co. v. Curr, 142 Fed. 421, 73 C. C. A. 537.

As an additional basis for the second contention defendants invoke section 3170 of the State statute, quoted above, and the construction placed thereon. Tripp v. Overocker, 7 Colo. 72, 1 Pac. 695; Downing v. More, 12 Colo. 316, 20 Pac. 766; San Luis Co. v. Canal Co., 3 Colo. App. 244, 32 Pac. 860.

It is obvious that to enforce defendants' contention would necessarily result not only in stripping the Secretary of the Interior of all power, discretion and responsibility bestowed upon him by the reclamation Act as to the planning of such projects, but would

also operate to transfer that power and discretion to local boards of commissioners; and if such boards were not of like mind as to the necessity for different sections of the same waterway, or as to separate waterways for the one project, the plan as a whole and also as to its different parts is thus thwarted and the legislative purpose is at once set at naught. The largeness of the project under consideration demonstrates that many canals and carrying and distributing ditches are necessary. How many and where they shall be put requires technical ability, as to which even those who are competent to decide may not agree with exactness. It does not appear just how far upstream the headgate of the canal, which defendants say has been constructed by petitioners and will serve (in conjunction with the lower end of ditch D) the same purpose as the proposed ditch, is above the headgate of the proposed ditch, but it does appear from the exhibits that that distance must be several miles, and it also appears from the exhibits that the line of that canal is more than one mile westerly from the headgate of the proposed ditch and that they are on different levels,—that difference being stated by counsel to be about one hundred and fifty feet. It also appears that the proposed ditch reaches, some three and a half miles below its headgate, the line of said canal; but at that point the ditch and the canal are on greatly different elevations. The waters in the canal are syphoned across the lower ground through steel pipes and continue on the higher level. Defendants' proposition is that enough water to supply ditch D should be dropped into it from the canal at this point, thus avoiding the construction of ditch D across their lands at its upper end.

As to the Blye & Hall ditch, it clearly appears that it never reached Spring Creek, that it has never been constructed between a point at the creek marked "Intake No. 1" and point marked "Intake No. 2," being a distance of about a half mile, the upper part of which is not on defendants' lands. That part of said ditch which it is claimed has heretofore been constructed on defendants' lands is below the point marked "Intake No. 2" and is about 600 feet in length. The proof conclusively shows that the lower part of said ditch was constructed many years ago, it was a small affair, has not been maintained, has not been used for many years, is now scarcely visible at places where it had been constructed, and that the only purpose it ever served was to gather some seepage and spring waters. It is not believed that the facts bring it within the intendment of said section 3170.

The apparent impossibility of carrying into execution the reclamation Act under the local restrictions contended for ought to be sufficient reason for their rejection.

But the necessity contemplated under the State statute does not mean an absolute one, but only a reasonable necessity. It is sufficient if it appear, "That the property sought to be condemned would conduce to some extent to the accomplishment of the public object to which it was to be devoted. With the degree of necessity, or the extent to which the property will advance the public purpose, the courts have nothing to do." "A large discretion is necessarily vested in those

who are vested with the power in determining what property and how much is necessary. To warrant a denial of the application, it should appear that what is sought is clearly an abuse of power on the part of the petitioner." Lewis, Em. Dom. 3rd Ed. 2 Vol. Sec. 601; 15 Cyc. p. 632.

Further, it must be borne in mind that the petitioners here are not exercising in this proceeding the State's power, and therefore are not bound by the limitations and restrictions placed on that power; but they are exerting their own sovereign right, and the only restriction on the exercise of that right is, that just compensation shall be made for private property taken for public use. 5th Amendment to the U. S. Constitution.

Kohl v. U. S., 91 U. S. 367, 374 (23 L. Ed. 449):

"If the United States have the power (Eminent Domain), it must be complete in itself. It can neither be enlarged nor diminished by a state. Nor can any state prescribe the manner in which it must be exercised. The consent of a state can never be a condition precedent to its enjoyment." Railroad Co. v. Lowe, 114 U. S. 525, 531, 5 Sup. Ct. 995, 29 L. Ed. 264.

The question of necessity is political and must be determined by congress. "When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance." Boom Co. v. Patterson, 98 U. S. 403, 406, 25 L. Ed. 206; U. S. v. Jones, 109 U. S. 513, 518, 519, 3 Sup. Ct. 346, 27 L. Ed. 1015.

"The question of necessity is not one of a judicial character, but rather one for determination by the law-making branch of the government." Backus v. Depot Co., 169 U. S. 557, 568, 18 Sup. Ct. 445, 450 (42 L. Ed. 853).

The legislative branch may delegate the determination of the question of necessity. The reclamation Act imposes that duty on the Secretary of the Interior, and it appears here that he has selected the route for ditch D claimed in the petition. Chappell v. U. S., 160 U. S. 499, 510, 16 Sup. Ct. 397, 40 L. Ed. 510; Burley v. U. S., 179 Fed. 1, 102 C. C. A. 429, 33 L. R. A. (N. S.) 807; U. S. v. Certain Lands (C. C.) 145 Fed. 654, 657; Barrett v. Kemp, 91 Iowa, 296, 59 N. W. 76; Warner v. Town of Gunnison, 2 Colo. App. 431, 31 Pac. 238; Joplin Co. v. Joplin, 124 Mo. 129, 27 S. W. 406; Smith v. Gould, 59 Wis. 631, 18 N. W. 457; Farneman v. Cemetery Ass'n, 135 Ind. 344, 35 N. E. 271; Philadelphia v. Ward, 174 Pa. 45, 34 Atl. 458; Kirkwood v. School District, 45 Colo. 368, 101 Pac. 343.

This question of necessity obviously goes to petitioners' fundamental right, and the provisions of the State statute in that respect cannot be imposed on the petitioners without their consent. Neither section 2 of the Act of August 1st, 1888 (25 Stat. 357), nor the general conformity Act are effective for that purpose. They relate only "to practice, pleadings, forms and modes of proceeding." Hills & Co. v. Hoover, 220 U. S. 329, 336, 31 Sup. Ct. 402, 55 L. Ed. 485.

On the facts here presented, the conclusion is reached that the only inquiry for determination in limine is whether the contemplated purpose to which the lands sought to be condemned are to be devoted is

a public use. Shoemaker v. U. S., 147 U. S. 282, 298, 13 Sup. Ct. 361, 390 (37 L. Ed. 170):

"The adjudicated cases likewise establish the proposition that while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken, is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted."

[3] 3. Section 15 found in the Bill of Rights in the Colorado Constitution, is this:

"That private property shall not be taken or damaged, for public or private use, without just compensation. Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested."

The Colorado statute (Section 2420, R. S. Colo. 1908) makes provision for the manner of executing this constitutional requirement. It provides that pending the proceeding in condemnation the judge or the court may determine the amount that petitioner shall pay or deposit pending the ascertainment of damages, and that on payment of said sum into court, to be there held until the damages are ascertained, the court may, by an order, let the condemnor into possession. The defendants insist that they are also entitled to have this done before the petitioners can be let into possession. McClain v. People, 9 Colo. 190, 11 Pac. 85.

Here again it is noted that there are no such restrictions in the Federal Constitution or Acts of Congress on the petitioners' rights. The reclamation Act provides a fund from which to pay the damages to which defendants may be entitled.

Cooley's Constitutional Limitations, p. 694:

"When the property is taken directly by the State, or by any municipal corporation by State authority, it has been repeatedly held not to be essential to the validity of a law for the exercise of the right of eminent domain, that it should provide for making compensation before the actual appropriation. It is sufficient if provision is made by the law by which the party can obtain compensation, and that an impartial tribunal is provided for assessing it. * * * It is essential, however, that the remedy be one to which the party can resort on his own motion; if the provision be such that only the public authorities appropriating the land are authorized to take proceedings for the assessment, it must be held to be void." Lewis, Em. Dom. Vol. 2, 3rd Ed. Sec. 963 et seq.

If it be conceivable that petitioners could dismiss this proceeding after being let in, or that they would withdraw on the assessment of damages, still an impartial tribunal is open to the defendants in which, by initiation on their part, the damages could be assessed. They are thus protected. Act March 4, 1911 (33 Stat. p. 1136, § 145); U. S. v. Manufacturing Co., 112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846; Cherokee Nation v. Railway Co., 135 U. S. 641, 658, 10 Sup. Ct. 965, 34 L. Ed. 295; Sweet v. Rechel, 159 U. S. 380, 16 Sup. Ct. 43, 10 L. Ed. 188; Crozier v. Krupp, 224 U. S. 290, 32 Sup. Ct. 488, 56 L. Ed. 771; Adirondack Co. v. State, 176 U. S. 335, 349, 20 Sup. Ct.

460, 44 L. Ed. 492; Great Falls Mfg. Co. v. Garland (C. C.) 25 Fed. 521.

The only question now open is one of damages which must be assessed by a jury in the usual way. Chappell v. U. S., 160 U. S. 499, 16 Sup. Ct. 397, 40 L. Ed. 510.

The motion will be sustained and an order entered letting the petitioners in.

It is so ordered.